## HAMMOND LUMBER CO. v. SAILORS' UNION OF THE PACIFIC et al.

### (Circuit Court, N. D. California. November 7, 1906.)

### No. 13,919.

1. WITNESSES—PRIVILEGE—PROTECTION.
   A proceeding for the punishment of a defendant for contempt for the violation of an injunction will not be quashed because the petition shows that certain of the facts therein stated were obtained from testimony given by defendant as a witness in another case, even if he is protected, by Rev. St. § 860 [U. S. Comp. St. 1901, p. 661], from having such testimony used against him in the proceeding; it not appearing that such facts may not be proved by other testimony.

2. INJUNCTION—VIOLATION—PUNISHMENT—SUFFICIENCY OF PETITION.
   A proceeding to punish for contempt for violation of an injunction is summary in character, and technical pleadings are not required; but it is sufficient that by petition, affidavit, or other showing it is made to appear that there has been a willful violation of the court's order.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 503.]

3. SAME—SERVICE OF RESTRAINING ORDER.
   The service of a certified copy of a restraining order is sufficient to render a defendant so served punishable for contempt for its willful violation.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 445, 446.]

4. SAME—SUFFICIENCY OF BOND.
   The validity of a bond required on the entry of a restraining order is not affected by the fact that it bears a date prior to the entry of the order, where the sureties did not justify, nor was it filed, until the date of the order.

149 F.—37

Proceeding to Punish for Contempt. On motions and demurrers attacking the sufficiency of the petition.

Henry Ach (J. W. Dorsey, of counsel), for complainant.
H. W. Hutton, for defendants.

WOLVERTON, District Judge. On July 13, 1906, there was pending a suit for injunction in the above cause, also an application for an injunction pendente lite, and, a prima facie case having been shown, the court made and caused to be entered a restraining order, whereby it was ordered that the defendants named be restrained during the pendency of the hearing for a temporary injunction, "upon its (complainant's) giving a bond with two good and sufficient sureties, to be approved by the clerk of this court, in the penal sum of one thousand dollars, securing respondents against all loss or damage which may result from the issuance of such restraining order, should it be finally determined that the same was improperly issued, or that may be awarded to respondents by reason of the issuance of such order." The order runs: That the defendants (naming them) their agents, servants, etc., are hereby specifically restrained and enjoined from boarding or attempting to board the steam schooner Arctic, the steam schooner Ravallie and the steamship Francis H. Leggett, against the commands, directions or requests of the master or of those in control of said vessels, and each and all of them, from in any wise interfering with the crews, foreman, cooks, stewards, seamen, or either or any of them, or any of the servants or employés of said vessels, or any of them, without due process of law, or in any wise making any threats of bodily harm against the said seamen, crews, firemen, cooks, stewards, or other employés of said vessels, or in any wise interfering with the business or concerns of the said steam schooners and the said steamship, or either or any of them, either in the Bay of San Francisco, or any place within the jurisdiction of this court, except by due process of law; from in any wise seeking to prevent the said vessels from conducting their and each of their legitimate businesses, and from in any wise conspiring, colluding or confederating together for the purpose of preventing the same from receiving and discharging freight and passengers; and from making any threats of harm or disaster to any person or persons employed on said vessels or either or any of them.

A bond in the required sum was filed on the same day and approved by the clerk, conditioned to pay the defendants all the "costs and damages" which may be awarded, etc., which bears date July 9th; the sureties justifying on the 13th. · Certified copies of this order were served upon the defendant associations on the following day. On August 8, 1906, an order of injunction pendente lite was made and entered, following in effect the language of the restraining order, and directing, further, that the restraining order theretofore issued be and the same remain in force as to each of the respective parties thereby enjoined, until the writ issued and was served. The writ issued at once, and was served upon the three associations and Andrew Furuseth. On September 11, 1906, the complainant filed a petition, praying that an attachment issue against certain named individuals, and that they be

arrested for contempt of court for acting in disobedience to said orders, upon which an order to show cause was granted.

After setting forth the facts of the issuance of said order and injunction, the petition shows that, about May 28, 1906, the Sailors' Union of the Pacific declared a strike and directed its members not to work upon the vessels of the complainant, and that the other two associations indorsed such strike; that there was formed a strike committee, styled variously the "Strike Committee," "Emergency Committee," and "Executive Committee," composed of 11 members, 7 of whom were members of the Sailors' Union, and 2 of each of the other associations; that, at a meeting held about June 4th, another committee was appointed to carry into effect the orders of the union, composed of Andrew Furuseth, E. A. Erickson, John Carney, Harry Lundberg, and Walter McArthur, which was also denominated the "Executive Committee," and to which was subsequently added the names of Edward Anderson and C. C. Simonson; that certain differences existed between complainant and the Sailors' Union, touching an increase in the wages of the former's employés, and that the unions and associations named and A. Furuseth conspired to demand, persuade, and prevent any one and all persons from entering or remaining in the employ of complainant, and, for carrying into effect such a purpose, the executive committee was provided; that the said strike committee and A. Furuseth, Eugene Steidel, and John Carney have at all times had full charge and power and authority to call into requisition such ways and means deemed effective to carry out the object of the conspiracy; and that the conspiracy extended also to a prevention of the complainant's carrying on its business as shippers. Thereafter the petition sets up specific acts, some of them of violence, which are alleged to be in violation of the restraining and injunctive orders, and which, if true, render the parties restrained and participating in contempt. These acts are alleged to have been committed on different dates after the making, entry, and issuance of the orders.

The defendants appearing, have first interposed a motion to strike out various portions of the petition, for the reason, among others, that the acts complained of were not directed against the ships of the complainant, but against divers other ships and vessels of other companies and corporations doing a like business as the complainant. I am of opinion that, so far as the motion covers acts of the nature here indicated, it should be allowed, for the reason that they are in no measure a violation of the restraining or injunctive orders. These orders have in purview only the two schooners and the steamship named in the petition belonging to the complainant, but the matters moved against have a much wider range. The court will therefore sustain the motion as it respects the eighth to the twenty-sixth specifications, inclusive, and also the twenty-ninth, and all those allegations of the petition noted by such specifications will therefore be stricken out.

Included in the matter stricken out are certain purported minutes of Andrew Furuseth, which are comprised in subdivision No. 25. I require this matter to be eliminated for the reason that it is merely evidentiary in its bearing, and not the statement of ultimate or proba-

tive facts. The motions extend also to striking out numerous affidavits, but these I will permit to remain in the record for whatever pertinency they might serve as evidence in the cause, but the defendants will not be required to answer them for the purpose of making up the pleadings or issues. It is sufficient that they answer the petition if deemed advisable. The cause does not seem ripe for a final determination at this juncture. The defendants are moving and demurring to the petition as though the issues were not settled, and have offered no evidence in refutation of the charges or in their own defense, so that the court cannot finally determine the matter now, nor until the preliminary matters are disposed of, that defendants may have an opportunity to purge themselves of the contempt. When it comes to the final settlement of the cause, then the court may determine as to the relevancy of the affidavits.

Andrew Furuseth next moves the court to quash the proceedings as to him, because the petition shows that many of the facts set forth therein were obtained from him while testifying in obedience to a subpoena in another cause, namely, the California & Oregon Steamship Company v. Sailors' Union of the Pacific et al., pending in the superior court of the city and county of San Francisco, state of California, and that therefore they should not be permitted to be used against him, invoking the privileges vouchsafed to parties under section 860, Rev. St. U. S. [U. S. Comp. St. 1901, p. 661]. It is sufficient answer to the motion, even if section 860 protects Furuseth from having such testimony as he gave brought against him in this proceeding—a matter I do not now decide—that it is within the bounds of probability that other testimony might be adduced wholly aside from that tending to his conviction for contempt, or even that the same facts discovered by him might be otherwise shown. So the motion will be denied.

Following these motions are demurrers to petition, as follows: First, a separate demurrer by Martin Hunter; second, a like demurrer by Harry Johnson; and, third, a joint demurrer by Walter McArthur, Eugene Steidel, John Carney, Henry Lundberg, E. A. Erickson, A. Furuseth, and C. C. Simonson. As to all these parties, it is only necessary to add that the showing of the petition, through allegations of conspiracy and touching other acts of the parties connecting them in one way and another with the acts and things complained of, is sufficient to require each and all to purge themselves of the alleged contempt. The proceeding is summary in character, and technical pleadings are not required, but it is sufficient that by petition, affidavit, or other showing it is made to appear that there has been a willful violation of the court's order. To this pleading, whatever it may be, it would be proper for defendants to file a formal answer, if they so desire.

Another objection made to the petition is that the restraining order, so called, was never issued. A certified copy of the order entered was served, however, and a willful violation thereof, it seems to me, amounts to a contempt.

The objection to the bond, that it bears date of the 9th while the order was not entered until the 13th of July, is without merit, as it is clear that the bond was not complete until the sureties justified, which

was on the latter date, nor was it filed in the case until the entering of the order.

The demurrers will therefore also be overruled. The defendants may have leave to make such answer to the petition as they may deem necessary within 10 days.