## HILL et al. v. UNITED STATES.
### KARNS v. SAME.

Circuit Court of Appeals, Eighth Circuit. June 11, 1929.

Nos. 8183, 8184.

See, also, 27 F.(2d) 453.

John T. Harley, of Tulsa, Okl., for appellants.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl.

Before KENYON, Circuit Judge, and FARIS and SANBORN, District Judges.

SANBORN, District Judge. The record in these cases shows that on January 3, 1928, a bill in equity was filed in the United States District Court for the Northern District of Oklahoma by the United States against B. H. Boman, Sid Clark, A. W. Cramer, Maggie Cramer, Tommie Hill, and Sandy Hill, for the purpose of abating a common nuisance alleged to exist in certain premises alleged to be owned or controlled by them in South Coffeyville, Okl., known as "Tommie Hill's Roadhouse." A temporary injunction was prayed for, and attached to the bill of complaint were affidavits showing a purchase of intoxicating liquor on September 15, 1926, upon the premises, a purchase of liquor on November 15, 1927, another purchase on November 18, 1927, search of the premises on November 20, 1927, and the finding of six and one-half pints of corn whisky in a hedge fence near the premises and just over the Oklahoma line, in Kansas, asserted to be the place from which the liquor was carried to the premises for sale. Upon this bill of complaint, a temporary injunction was issued forthwith, enjoining the appellants—who will be referred to as defendants—from manufacturing, selling, or bartering any intoxicating liquor as defined in section 1 of title 2 of the National Prohibition Act, upon these premises, and from removing or in any way interfering with the liquor or fixtures or other things thereon used, kept, or maintained in connection with the manufacture, sale, keeping, and bartering of such liquor, and from conducting or permitting

the continuance of the common nuisance asserted to exist.

On February 21, 1928, the United States charged A. W. Karns and Tommie Hill with contempt of court for violating this temporary injunction by selling and possessing, on January 31, 1928, intoxicating liquor upon the premises in question. Attached to the written charge is a copy of the writ and of the marshal's return that on January 4, 1928, the writ was served on "A. W. Kerns, Maggie Kerns, Tommie Hill and Sandy Hill." On February 27, 1928, a similar charge of contempt was made against Maggie Karns and Jack Rogers, who was alleged to be an employé or agent of Maggie Karns. Attachments and orders to show cause were issued, and A. W. Karns and Tommie Hill were brought into court on the 24th day of February, 1928. They first made motions to quash the accusation, which were denied. The accusation was then amended so as to charge further selling and possession of liquor on February 2, 1928. The defendants entered pleas of not guilty. Testimony was taken. The court found that each of them had knowledge of the injunction, and that each was guilty of willful contempt thereof. Both were sentenced to six months in jail and to pay a fine of $500. On the 5th day of March, 1928, Madge Karns, upon her plea of not guilty to a similar charge of contempt made against her, was tried, found guilty, and received the same sentence as the other defendants. The defendants seek to reverse these judgments.

■ It would serve no useful purpose to state in detail the evidence which tended to establish the fact that "Tommie Hill's Roadhouse" was a common nuisance after the writ of temporary injunction was issued and served. The evidence would support no other conclusion. The record discloses that the roadhouse was located in South Coffeyville, Okl., a town of a few hundred inhabitants, covering perhaps half a section of land just south of the Kansas line, in which town the defendants lived; that A. W. Karns and Madge Hill Karns—who in the abatement action were named as Cramer—were husband and wife; that Tommie Hill was the brother of Mrs. Karns; that the situation relative to the roadhouse and its operations was typical of such places, the title to the property being in Mrs. Karns, who denies any knowledge of any wrongdoing in the place, the place being actually operated by her husband and brother, who evidently acted as lookouts, the usual nonresident or unknown lessee, whose whereabouts are un-

ascertained—and the bartender on a salary, who did the actual selling of the liquor over the bar.

It developed upon the hearing that the deputy marshal, in serving the writ of injunction on January 4, 1928, had handed copies of it to Mrs. Karns and Mrs. Tommie Hill while they were sitting in an automobile on one of the streets of the town, and that he had not actually made personal service on either A. W. Karns or Tommie Hill, nor had he served copies at the residence of either. There was no direct evidence that these defendants knew that the temporary writ had issued. There is evidence that Mrs. Karns retained a copy of the writ and called upon her attorney with reference to it almost immediately after it was served. It therefore appears that she had actual knowledge of the issuance of the temporary injunction, and we find no difficulty in affirming the judgment and sentence so far as she is concerned. It is true that she said she knew nothing of any nuisance being maintained on the premises, but the circumstances disclosed by the evidence were ample to justify a conclusion that she was fully aware of what was going on, and not only knew of, but acquiesced in, the illegal use of the premises.

■ The only serious question in the case is whether there was any substantial evidence from which the trial judge could find, as he did, that A. W. Karns and Tommie Hill knew of the injunction and were guilty of a willful violation of it. It is the law that "to render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice." In re Lennon, 166 U. S. 548, 549, 17 S. Ct. 658, 660 (41 L. Ed. 1110); Tosh v. West Kentucky Coal Co. (C. C. A.) 252 F. 44.

■ In order to convict for contempt, it must be shown that the defendants had knowledge of the injunction, and with such knowledge committed a willful violation of it. Dowagiac Mfg. Co. v. Minnesota Moline Plow Co. et al. (C. C. A.) 124 F. 736.

In re Rice (C. C.) 181 F. 217, 227, it was held that, where a sworn denial of knowledge is made, and the circumstances admit of fair doubt, the courts will not punish for contempt. To the same effect is Garrigan v. United States (C. C. A.) 163 F. 16, 22, 23 L. R. A. (N. S.) 1295. Donoghue v. United States (C. C. A.) 282 F. 606, supports the defendants' contention that one who has no

knowledge of an injunction issued under sections 22–24, title 2, of the National Prohibition Act (27 USCA §§ 34–38), is not guilty of contempt. See, also, Hammond Lumber Co. v. Sailors' Union (C. C.) 149 F. 577, and 14 R. C. L. § 171.

The government, however, contends that the abatement proceeding, being one in rem, Engler v. United States (C. C. A.) 25 F. (2d) 37, 39, and restricting the use of the premises, binds all parties, and is notice to every one, and that it is not necessary to prove actual knowledge. There is some authority to the effect that every one dealing with premises against which there is an injunctional order restricting their use is bound to take notice of it. See Silvers v. Traverse, 82 Iowa, 52, 47 N. W. 888, 11 L. R. A. 804; State v. Porter, 76 Kan. 411, 91 P. 1073, 13 L. R. A. (N. S.) 463.

It is unnecessary in this case, however, to pass upon the question as to whether one maintaining a nuisance upon premises, in violation of an injunction, may be punished for contempt regardless of actual knowledge of the order, for the reason that knowledge, like any other fact, may be established by circumstantial evidence; and we think there were enough circumstances shown by the evidence to justify the court in making a finding that Karns and Hill did have knowledge of the injunction, particularly in view of the absence of any sworn denial on their part. The evidence establishes the relationship of these parties; indicates concert of action in the maintenance of the unlawful business; shows the smallness of the community, the notoriety of the "Tommie Hill Roadhouse," and the obvious interest of the defendants in evading any interference with their unlawful business as long as possible. These and other circumstances indicated to the trial judge, and indicate to us, that it was so highly improbable that these defendants did not know of this injunction as to make a finding that they did know proper. It would seem just as probable that one could successfully drop a stone into a bird's nest without disturbing the birds as that a temporary injunction of this kind could, under the circumstances proven, be thrust into a nest of bootleggers without all of them knowing of it, even though all were not served. The Supreme Court of Kansas, in State v. Porter, supra, said: "In wilfully embarking upon an unlawful business, they might well be presumed to have scanned every possible source of danger and to have not overlooked so public a proceeding as the injunction action. It is more probable they thought they had cunningly evaded it." So, here, where the willful continuance of the unlawful business in which these defendants were engaged was shown, it was not unreasonable for the court to find, under all the circumstances, that this temporary injunction had not been overlooked, but that the purpose and intent of all the defendants was to disregard it.

While the question as to the sufficiency of the evidence to justify the finding of actual knowledge on the part of the defendants A. W. Karns and Tommie Hill is a close one, our conclusion is that the judgment should be affirmed, and it is so ordered.

FARIS, District Judge, dissents in Case No. 8183, and concurs in Case No. 8184.